ALTENBERND, Judge.
 

 Deborah Lynn Armstrong (Deborah) appeals an order denying her motion to intervene in the closed dissolution proceeding between Janice M. Armstrong (Janice) and Adger Armstrong. Although some legal confusion exists concerning the respective rights of Deborah and Janice to Mr. Armstrong’s retirement plan, we conclude that a motion to intervene in a closed divorce proceeding was not the correct method to resolve this dispute. The trial court should have dismissed or stricken Deborah’s motion, as requested by Janice, rather than treat it as a motion to modify child support. Accordingly, we reverse the order on appeal and remand for entry of an order of dismissal without prejudice to Deborah’s rights to file an appropriate proceeding to resolve the confusion.
 

 Adger Armstrong played football in the National Football League for approximately six years in the early 1980s. He began his career in Texas and ended it in Florida. As a player, he participated in the Bert Belle/Pete Rozelle NFL Player Retirement Plan. That plan is managed by a plan administrator in Baltimore, Maryland. The details of the plan and the monetary value of Mr. Armstrong’s participation in the plan are not revealed by the record in this case.
 

 Mr. Armstrong married Deborah in 1977. They divorced in Texas in 1986. Mr. Armstrong was properly served in that divorce but did not otherwise participate in the proceeding. In the final decree of divorce entered in Texas, provisions were made for the custody and support of a child who is now an adult. Deborah apparently received no form of permanent alimony. The decree divided the marital estate between the two parties. Deborah received:
 

 One-half (1/2) of any and all sums as of May 1, 1986[,] whether unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to any profit-sharing plan, retirement plan, pension plan, severence [sic] pay account, employee stock option plan, employee savings plan, accrued unpaid bonuses, or other benefit program existing by reason of ADGER ARMSTRONG’S past, present, or future employment, specifically but not limited to the severence [sic] pay account ADGER ARMSTRONG will be entitled to upon retirement from the National Football League.
 

 In 1986, Mr. Armstrong married Janice. They had four children during this marriage and divorced in Tampa, Florida, in 2002. Mr. Armstrong again did not actively participate in the dissolution proceeding.
 
 *134
 
 Because he did not participate, it appears that Janice, her attorney, and the court were all unaware of the earlier Texas judgment that awarded half of the retirement plan to Deborah.
 
 [1]
 

 The amended final judgment of dissolution entered on October 10, 2002, in the Florida proceeding, found that Mr. Armstrong had abandoned his family. It awarded custody of the four children to Janice. Since it was unlikely that Mr. Armstrong would pay child support after having abandoned his family, the final judgment recites in paragraph 9:
 

 That the Respondent is the beneficiary of a National Football Player Benefits, a/k/a Bert/Bell/Pete Rozelle NFL Player Retirement Plan, and that said Benefits can be used to pay child support for the children for past support commencing on June 28, 1999, until the youngest child becomes eighteen (18) years of age or until nineteen (19) years of age if the child is still attending high school full time.
 

 At the conclusion of the final judgment it orders:
 

 That Petitioner and the minor children are entitled to Respondent’s National Football Player Benefits, a/k/a Bert/ Bell/Pete Rozelle NFL Player Retirement Plan, showing an arrearage of $25,800.00 from July 1, 1999 through October 1, 2002, future payments of $645.00 per month commencing November 1, 2002 until May 8, 2017 when the youngest child reaches the age of 18 or 19 if still in high school as a full time student $112,280.00, for a total child support amount of $138,030.00.
 

 Janice’s attorney prepared a Qualified Domestic Relations Order (QDRO) that was entered on October 28, 2002. Because Deborah’s attorney died shortly after entry of the Texas decree in Texas, he had never prepared Deborah’s QDRO. A different attorney prepared a QDRO for Deborah in February 2003, which was executed by a Texas judge and signed by both Deborah and Adger Armstrong to indicate their approval and consent to both the form and content of the QDRO. Although the timing of this order suggests that it may have been prepared in response to the QDRO entered in Florida, our record does not explain the timing of this order.
 

 This court does not have jurisdiction over the NFL Player Retirement Plan. We have little knowledge as to the correspondence or other communications between the two former wives of Mr. Armstrong and the plan administrator. The record contains a letter dated January 13, 2009, from an attorney representing the Plan, indicating that the Plan would begin paying Janice’s claim in February 2009 unless the plan administrator received a court order “directing otherwise.”
 

 On January 16, 2009, Deborah filed a motion to intervene in Janice’s Florida dissolution action asking the Florida court to enforce the Texas QDRO and modify that Florida QDRO. In May 2009, Mr. Armstrong signed a “joinder in motion” and filed an affidavit stating that he wants Deborah to receive her 50 percent of the retirement benefits and that he does not wish to modify in any fashion his child support obligation to the children of his marriage to Janice. These documents are the full extent of his participation in these proceedings.
 

 Janice’s trial counsel appeared in response to the motion to intervene and filed a motion to dismiss the intervenor’s mo
 
 *135
 
 tion. The motion to dismiss accurately-noted that the final judgment in the case had been entered seven years earlier in 2002. It argued that the intervenor was a “stranger” to the case and had no standing to seek relief by intervention in 2009.
 

 The motion to dismiss was set for hearing on May 7, 2009. It is unclear from our record, but perhaps the motion to intervene was also noticed for this hearing. In any event, the hearing was somewhat disorganized, and Mr. Armstrong’s recent filing indicating that he did not wish to modify child support seems to have redirected the trial court’s view of the case. On May 11, 2009, the trial court denied the interve-nor’s motion and determined that this ruling rendered the motion to dismiss moot. The trial court concluded that Deborah’s motion was actually a motion to modify child support to Janice’s children and that Deborah had no authority to seek such a modification. Deborah appealed this ruling.
 

 Although it is undoubtedly true that Deborah would have no authority to seek modification of child support to Janice’s children, we are not convinced that she ever intended to alter the amount of child support that had been awarded in the Florida case. Deborah actually argues that she owned 50 percent of the retirement plan before Janice became Mr. Armstrong’s lawful wife.
 
 [2]
 
 As a result, she maintains that the Florida court never obtained any legal authority to award her 50 percent of the retirement plan to Janice as a method to pay child support. In essence, Deborah is arguing that the Florida court and the plan administrator are wrongfully using her assets to pay child support to Janice’s children.
 

 Janice argues that rights to the Plan are not determined by the dates on the two final judgments in the divorce proceedings, but rather are determined either by the dates on the QDROs or by the time of filing of the QDRO with the plan administrator. She argues in terms of “perfecting” a claim to the retirement plan, much like one might perfect a secured interest under the Uniform Commercial Code.
 
 See
 
 §§ 679.S081-.3141, Fla. Stat. (2009).
 

 It may come as no surprise that neither former wife has presented this court with a statute or precedent that squarely resolves the matter. While the filing of the QDRO with the plan administrator may affect the administrator’s response to the claim, we are at least initially impressed with Deborah’s argument that her claim to the retirement plan vis-á-vis a future wife was determined by her final decree in Texas. However, if Deborah’s argument is correct, she would appear to have no need to modify the Florida judgment or the Florida QDRO. Those orders simply distributed 100 percent of the retirement rights of Mr. Armstrong to Janice as those rights existed in 2002. In other words, the Florida judgment distributed 100 percent of his 50 percent claim to the plan.
 

 We conclude that the reasoning in the trial court’s order, treating the motion to intervene as a motion to modify child support, was an error of law. On the other hand, we agree with Janice that the dissolution proceeding was completely concluded and that it did not present a lawsuit in which Deborah was free to intervene.
 
 See generally Lewis v. Turlington,
 
 499 So.2d 905, 907 (Fla. 1st DCA 1986) (“The general rule is that after litigation has resulted in a final judgment third persons will not be allowed to intervene as parties to the litigation.”).
 

 
 *136
 
 A Florida court must give full faith and credit to a valid Texas judgment, and a Texas court must honor a Florida judgment in the same manner. Nothing suggests that either of these judgments is void or improper. Somehow the two judgments need to be reconciled with one another in a court that has jurisdiction over both former wives, and in a proceeding that either binds the plan administrator or that presents a resolution that the plan administrator is willing to follow.
 
 [3]
 
 It maybe that the parties could obtain a resolution if they cooperate in an action for declaratory relief. This court merely holds that a motion to intervene in the closed Florida divorce is not the correct procedure to reach the needed resolution. We require the trial court to dismiss the motion on remand so that it will be clear that the trial court did not reach and resolve the merits of this dispute.
 

 Reversed and remanded.
 

 KELLY and KHOUZAM, JJ„ Concur.
 

 [1]
 

 . Most, if not all, of the value of this retirement plan would apparently have been a non-marital asset that Mr. Armstrong earned and brought into the second marriage because his career appears to have ended at approximately the same time that he married Janice.
 

 [2]
 

 . As if this case were not already sufficiently' complex, the record suggests that Janice married Mr. Armstrong in Florida a few weeks before he obtained a divorce from Deborah in Texas.
 

 [3]
 

 . Despite his apparent willingness to sit on the bench and watch this event from the sidelines, Mr. Armstrong may have an interest in these proceedings. Janice was not awarded 100 percent of his retirement as an asset, but merely as a source of payment for court-ordered child support. His youngest child turns eighteen in 2017. Depending on the amount of his vested interest in this retirement plan, there may come a time when he receives payments from the plan.